## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIDGET SIMPSON, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-16465 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WALGREEN CO.; | |
| SUMTER EASY HOME LLC; | |
| NINGBO (USA) HOME-LINK PLASTIC PRODUCT MFG., LTD., | |
| Defendants. | |

Plaintiff Bridget Simpson ("Plaintiff" or "Simpson") brings this Class Action Complaint against Walgreen Co. ("Walgreens"), Sumter Easy Home LLC ("Sumter"), and Ningbo (USA) Home-Link Plastic Product Mfg., Ltd. ("Ningbo") (collectively, "Defendants"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge of the allegations specifically pertaining to her, and upon information and belief, the following:

### NATURE OF THE ACTION

1.       Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendants regarding their misleading business practices with respect to the sale of their Complete Home Heavy Duty Cutlery (the "Products").

2.       Defendants have marketed and sold the Products with labeling and packaging that leads consumers to believe that the Products can be safely washed in the dishwasher in the way standard cutlery is.

3.      By labeling the Products as "DISHWASHER SAFE" and "HEAVY DUTY," Defendants have misled consumers into believing that the Products are actually "dishwasher safe" which, in the context of cutlery, means that the Products can be safely washed in the bottom rack of a dishwasher.  Unlike, for instance, unlike large pots and pans, cutlery is normally loaded vertically in a cutlery basket which can only fit in the bottom rack of most dishwashers.[1]

4.      However, unbeknownst to reasonable consumers, the Products are not dishwasher safe because they can only be safely washed on the ***top rack*** of the dishwasher.  In fact, Defendants themselves admit that the Products are only "dishwasher safe" ***if*** cleaned on the top rack.

5.      Accordingly, representing that the Products are "DISHWASHER SAFE" and "HEAVY DUTY" deceives reasonable consumers.

6.      Defendants' deception causes consumers to suffer economic damage because they are not getting what they paid for: cutlery that is dishwasher safe.

7.      Thus, Plaintiff, on behalf of herself and all others similarly situated, brings this case seeking damages, restitution, declaratory and injunctive relief, and all other remedies this Court deems appropriate.

## PARTIES

8.      Plaintiff is a citizen of California and resides in Riverside, California. In or about May 2022, Plaintiff purchased Complete Home Heavy Duty cutlery at a Walgreens store in Riverside, California. The products were all uniformly facing the same direction. The front and back labels bear the all-caps representations of "DISHWASHER SAFE" and "HEAVY DUTY." Similarly, the side labels of the product reiterate the "HEAVY DUTY" representation.

9.      Based on these Representations, Plaintiff believed she was purchasing products

---

[1] For instance, General Electric (one of the most popular dishwasher brands) recommends placing forks and knives with the handles up and instructs consumers to "always" place cutlery baskets in the lower rack unless the owner's manual suggests otherwise.  *See* https://products.geappliances.com/appliance/gea-support-search-content?contentId=18915 (last visited Dec. 4, 2023).

that were dishwasher safe. This belief was material to her decision to purchase the product, as she values affordable plasticware options that can be safely cleaned and reused so as to ensure utility but also minimize their environmental impact.

10.     However, unbeknownst to Plaintiff, the Products are not dishwasher safe.  After hosting a barbecue, Plaintiff attempted to wash the Products and was shocked to find they had melted in her dishwasher's cutlery basket, destroying the Products and potentially harming her dishwasher.

11.     Plaintiff would not have purchased the Products or would have paid significantly less for them had she known that the Products were not in fact "DISHWASHER SAFE" as they claimed. Plaintiff therefore suffered an injury-in-fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.

12.     Despite being misled, Plaintiff would likely purchase the Products in the future if she could be assured that the Products were in fact dishwasher safe. Plaintiff is currently prevented from doing so, however, due to the continuing refusal of Defendants to remedy such issues. While Plaintiff currently believes the Products are not dishwasher safe, she lacks personal knowledge as to Defendants' specific business practices, leaving doubt in her mind as to the possibility in the future that some of the Products could be dishwasher safe. This uncertainty, coupled with her desire to purchase the Products, and the fact that she regularly visits Walgreens stores which sell the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the false and/or misleading representations alleged herein. In addition, Class members will continue to purchase the Products, reasonably but incorrectly believing that they are dishwasher safe.

13.     Defendant Walgreens maintains its principal place of business in Deerfield, Illinois. Defendant operates retail drugstores, offering a wide range of prescription and non-prescription drugs, as well as wellness, health and fitness products, everyday wares and foodstuffs. The Complete Home Heavy Duty cutlery Products are available at Walgreens locations throughout Illinois and nationwide. Defendant, directly and/or through its agents, is

responsible for the manufacturing, packaging, marketing, distribution, and sale of the Complete Home Heavy Duty cutlery Products in Illinois and nationwide.

14.    Defendant Sumter Easy Home, LLC. maintains its principal place of business in Sumter, South Carolina. Sumter Easy Home manufactures and supplies home organization and house wares including plastic products, and markets its products worldwide. Defendant, directly and/or through its agents, is responsible for the manufacturing, packaging, marketing, distribution, and sale of the Complete Home Heavy Duty Flatware Products in Illinois and nationwide.

15.    Defendant Ningbo (USA) Home-Link Plastic Product Mfg., Ltd. maintains its principal place of business in Rowland Heights, California. Defendant Ningbo (USA) Home-Link Plastic Product Mfg., Ltd. manufactures and distributes high end plastic products, biodegradable products, plastic tableware products, durable household goods, and other related products nationwide. Defendant, directly and/or through its agents, is responsible for the manufacturing, packaging, marketing, distribution, and sale of the Complete Home Heavy Duty cutlery Products in Illinois and nationwide.

## JURISDICTION AND VENUE

16.    This Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000. There is diversity of citizenship between some members of the proposed Class and Defendants. Because Plaintiff is a citizen of California and Defendants are citizens of Illinois, South Carolina, and China, at least one member of the plaintiff class is a citizen of a State different from Defendants. Finally, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

17.    This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have each purposefully availed themselves of the benefits and protections of the State of Illinois by continuously and systematically conducting

substantial business in Illinois. Each Defendant markets and distributes its products in Illinois and California.

18.     The Court additionally and independently has personal jurisdiction over Defendant Walgreens because Walgreens is located and operates its headquarters in the State of Illinois.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain key business operations in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

20.     There are various grades and qualities of plastic cutlery and dishware, ranging from the one-use disposable offerings found in fast-food restaurants to premium plastic ware utilized by some caterers and hosts looking for an aesthetically pleasing but efficient way to feed *en masse*.[2]

21.     One niche in the plasticware industry is that of dishwasher safe products.

22.     This representation has a specific and valuable meaning to consumers, as lesser-grade plastics can melt in the dishwasher and damage the machinery. This can lead to foul odors emanating from the dishwasher, and sometimes even costly repairs.[3]

23.     Because certain plastics have a specific melting point, they can only be washed safely on the top rack of a dishwasher, where the hottest elements does not reach. Indeed,

-----

[2] https://supplize.com/blog/disposable-plastic-cutlery-comparison-guide-for-weights/ (last visited Dec. 4, 2023)

[3] https://products.geappliances.com/appliance/gea-support-search-content?contentId=17406#:~:text=Occasionally%2C%20a%20plastic%20object%20or,prior%20to%20using%20the%20dishwasher (last visited Dec. 4, 2023)

differentiating on this basis is common in the industry:[4]



## DISHWASHER SAFE SYMBOLS




**WINE GLASS WITH WATER DROPLETS**



**TWO DISHES RINSING IN A DISHWASHER**



**ONE PLATE AND WATER DROPLET**



**DISHWASHER SAFE ON TOP RACK**

24.     There is a clear distinction between washing a product on the top rack as opposed to the rest of the dishwasher.

25.     Thus, when a Product such as cutlery has been labelled "DISHWASHER SAFE" and "HEAVY DUTY" with no apparent qualifiers, the reasonable consumer believes that the product can be safely washed in the dishwasher as one would ***any other*** piece of cutlery.

26.     This is significant, as most dishwashers have a cutlery basket that will only fit in the bottom rack of the unit[5]:




---

[4] https://www.maytag.com/blog/kitchen/dishwasher-safe-and-tableware-symbols.html (last visited Dec. 4, 2023)

[5] *See* General Electrics, *supra* note 1, *see also* Bosch - 300 Series 24" Front Control Built-In Stainless Steel Tub Dishwasher with 3rd Rack, Softener, AquaStop Plus and 46dBA - Stainless Steel https://www.bestbuy.com/site/bosch-300-series-24-front-control-built-in-stainless-steel-tub-dishwasher-with-3rd-rack-softener-aquastop-plus-and-46dba-stainless-steel/6532908.p?skuId=6532908 (last visited

(footnote continued)

27. Thus, a reasonable consumer would believe after reading the representations "DISHWASHER SAFE" and "HEAVY DUTY" that the cutlery being sold is safe and suitable for the bottom rack's cutlery basket and does not need to be placed on the top rack, like other less durable products.

28. Defendants mislead consumers into buying the "DISHWASHER SAFE" and "HEAVY DUTY" Products when, in reality, they are **only** dishwasher safe **if** washed on the top rack of the dishwasher. Hidden on the bottom of the product, next to the barcode, is Defendants' admission that the Product is only "Dishwasher Safe **if** Cleaned on the Top Rack" (emphasis added):




29. Defendants distribute, market, and sell the Products in a manner that deceives reasonable consumers into thinking that the Products are dishwasher safe.

30. Defendants' deceptive and misleading marketing, packaging, and business

_____

Dec. 4, 2023); MAYTAG Stainless Steel Tub Dishwasher With Dual Power Filtration
https://www.maytag.com/kitchen/dishwashers-and-compactors/dishwashers/front-control-
dishwashers/p.stainless-steel-tub-dishwasher-with-dual-power-filtration.mdb4949skz.html (last visited
Dec. 4, 2023)

practices exploit consumer's desire to invest in dishwasher safe cutlery.

31.     Consumers, including Plaintiff, have suffered and continue to suffer an economic injury by Defendants' deceptions. They are not getting what they pay for— "heavy duty" and "dishwasher safe" cutlery. Instead, they pay a price premium for a product that is facially deceptive.

32.     At all relevant times pertaining to this Complaint, the Products were sold at Walgreens locations across California and Illinois.

33.     The foregoing Representations, taken in isolation, and as a whole, create the misleading impression that the Products are dishwasher safe.

34.     The Products' labeling, packaging, and marketing are misleading to reasonable consumers, including Plaintiff and other Class members, and only serve the profit-maximizing interests of Defendants.

35.     Defendants deceptively labeled and packaged the Products to target consumers who are interested in purchasing dishwasher safe cutlery.

36.     As the entities responsible for the development, manufacturing, packaging, distribution, and sale of the Products, Defendants knew or should have known that the Products falsely and deceptively misrepresent that the Products are dishwasher safe.

37.     Defendants know, knew or should have known, that Plaintiff and other consumers did and would rely on the labeling, packaging, and advertising before purchasing the Products, and would reasonably believe that the Products were dishwasher safe.

38.     Because the Products are not dishwasher safe as reasonably expected by Plaintiff and other consumers, Defendants' marketing of the Products was and continues to be misleading and deceptive.

39.     Plaintiff and other consumers have paid an unlawful premium for the Products. Plaintiff and other consumers would have paid significantly less for the Products had they known that the Products are not dishwasher safe. In the alternative, Plaintiff and other consumers would not have purchased the Products at all had they known that the Products are not dishwasher safe.

Therefore, Plaintiff and other consumers that purchased the Products suffered injury in fact and lost money as a result of Defendants' false, unfair, and fraudulent practices, as described herein.

40. As a result of their misleading business practices, and the harm caused to Plaintiff and other consumers, Defendants should be enjoined from deceptively representing that the Products are dishwasher safe. Furthermore, Defendants should be required to pay for all damages caused to misled consumers, including Plaintiff.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this case as a class action that may be properly maintained pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and on behalf of the following California Subclass, California Consumer Subclass, and Nationwide Class ("Classes"):

      a. **The "California Subclass":** All persons who purchased any of the Products in California within the applicable statute-of-limitations period.

      b. **The "California Consumer Subclass":** All persons who purchased any of the Products in California for personal, family, or household purposes within the applicable statute-of-limitations period.

42. Excluded from the Classes are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

43. Plaintiff is a member of the California Subclass and the California Consumer Subclass.

44. Plaintiff reserves the right to alter the Class definitions as Plaintiff deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of this District, and applicable precedent allow.

45. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that

individual Class members would use to prove those elements in individual actions alleging the same claims.

46.    **Numerosity**: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendants' business, Plaintiff believes there are thousands, if not hundreds of thousands, of Class members.

47.    **Predominance of Common Questions of Law and Fact**: There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members.

48.    All Class members were exposed to Defendants' deceptive advertising and marketing representations indicating that the Products are dishwasher safe, when in fact they are not.

49.    Furthermore, common legal and factual questions include but are not limited to:

a.    whether Defendants engaged in the course of conduct alleged herein;

b.    whether Defendants' conduct is likely to deceive a reasonable consumer;

c.    whether Defendants' conduct constitutes an unfair or deceptive act or practice;

d.    whether Defendants violated the consumer protection statutes set forth below;

e.    whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

f.    whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

50.    Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers

that will materially advance the litigation.

51. **Typicality**: Plaintiff's claims are typical of the claims of the Class members because Defendants injured all Class members through the uniform misconduct described herein; all Class members were subject to Defendants' false, misleading, and unfair advertising and marketing practices and representations, including the false and misleading representations indicating that the Products are dishwasher safe, when in fact they are not; and Plaintiff seeks the same relief as Class members.

52. Furthermore, there are no defenses available to Defendants that are unique to Plaintiff.

53. **Adequacy of Representation**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests.

54. Plaintiff has selected competent counsel that are experienced in class action and other complex litigation.

55. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendants. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously and have the resources to do so.

56. **Injunctive or Declaratory Relief**: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief an appropriate remedy.

57. **Superiority**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a. The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.

b. Further, it would be virtually impossible for Class members individually

to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

d.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

58.     **Notice**: Plaintiff's counsel anticipates that notice to the proposed Class will be effectuated through Court-approved notice dissemination methods, which may include mail, Internet postings, and/or published notice.

### **FIRST CLAIM FOR RELIEF**
### **Violation of California's Consumers Legal Remedies Act ("CLRA")**
### **California Civil Code §§ 1750,** *et seq***.**
### (*for the California Consumer Subclass*)

59.     Plaintiff realleges Paragraphs 1-58 above as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the

proposed California Consumer Subclass against Defendants.

61.     Each Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchase of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

62.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . .." By marketing the Products with their current labels, packaging, and advertisements, Defendants have represented and continues to represent that the Products have characteristics (that they are "dishwasher safe") when they do not have such characteristics. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

63.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current labels, packaging, and advertisements, Defendants have represented and continues to represent that the Products are of a particular standard, quality, grade, or style (that they are dishwasher safe) when they are of another standard, quality, grade, or style (the Products are not dishwasher safe). Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

64.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling, packaging, and marketing the Products with the Representations so that a reasonable consumer would believe that the Products are dishwasher safe, Defendants have violated section 1770(a)(9) of the CLRA.

65.     Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By labeling, packaging, and marketing the Products with the Representations, such that a reasonable consumer would believe that they are dishwasher safe, and then not selling the Products in accordance with this Representation (because the Products are not dishwasher safe), Defendants have violated section 1770(a)(16) of the CLRA.

66.     At all relevant times, Defendants have known or reasonably should have known that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Representations in purchasing the Products.

67.     Plaintiff and members of the California Consumer Subclass have reasonably and justifiably relied on Defendants' misleading and fraudulent conduct when purchasing the Products. Moreover, based on the very materiality of Defendants' fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

68.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendants' conduct was misleading and fraudulent.

69.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendants from further wrongful acts, unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

70.     Pursuant to Cal. Civ. Code § 1782, on May 2, 2023, counsel mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant Walgreens. Defendant Walgreens received the notice and demand letter on May 3, 2023.  Defendants Sumter and Ningbo's parent company confirmed receipt of the letter on June 7, 2023.  The CLRA letter that provided notice of Defendants' violation of the CLRA demanded Defendant Walgreens correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant Walgreens refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendants failed to comply with the letter.

71.     Because Defendants have failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after they received the notice and demand

letter, Plaintiff timely filed this complaint against Defendants.

## SECOND CLAIM
### Violation of California's False Advertising Law
### CAL. BUS. & PROF. CODE § 17500 *et seq.*
### (*for the California Subclass and California Consumer Subclass*)

72.     Plaintiff realleges Paragraphs 1-58 above as if fully set forth herein.

73.     Plaintiff brings this claim on behalf of the California Subclass and California Consumer Subclass for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL").

74.     The FAL prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.     As detailed above, Defendants' marketing and sale of the Products to Plaintiff and other members of the California Subclass and California Consumer Subclass is likely to deceive a reasonable consumer because Defendants' representations and omissions are likely to lead a reasonable consumer to believe the Products are dishwasher safe, when in fact they are not.

76.     In reliance of Defendants' false and misleading representations indicating the Products are dishwasher safe, Plaintiff and the other members of the California Subclass and California Consumer Subclass purchased the Products. Moreover, based on the very materiality of Defendants' fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the members of the California Subclass and California Consumer Subclass.

77.     Defendants knew or should have known that their labeling and marketing of the Products is likely to deceive a reasonable consumer.

78.     Plaintiff requests that this Court cause Defendants to restore this fraudulently obtained money to Plaintiff and members of the California Subclass and California Consumer Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein.

Otherwise, Plaintiff and members of the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**THIRD CLAIM**
**Violation of California's Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200** *et seq.*
**(*for the California Subclass and California Consumer Subclass*)**

79.     Plaintiff realleges Paragraphs 1-58 above as if fully set forth herein.

80.     Plaintiff brings this claim against Defendants on behalf of the California Subclass and California Consumer Subclass for violation of the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").

81.     The circumstances giving rise to the allegations of Plaintiff and the members of the California Subclass and California Consumer Subclass include Defendants' corporate policies regarding the marketing, sale, and provision of the Products.

82.     The UCL prohibits "unfair competition," which it defines to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." Cal. Bus. & Prof. Code § 17200.

83.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

84.     As detailed herein, Defendants' acts, misrepresentations, omissions, and practices violate the FAL and the CLRA. On account of each of these violations of law, Defendants have also violated the "unlawful" prong of the UCL.

85.     As a result of Defendants' unlawful business acts and practices, Defendants have and continues to unlawfully obtain money from Plaintiff and members of the California Subclass and California Consumer Subclass.

86.     Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical,

oppressive, and unscrupulous, as the benefits for committing such acts of practices are outweighed by the gravity of the harm to the alleged victims.

87.     Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who purchased the Products and were deceived by Defendants' misrepresentations and omissions. Deceiving consumers about the Products being dishwasher safe is of no benefit to consumers. Instead, Defendants' deception exploits consumer's desire to purchase dishwasher safe cutlery. The injury caused to consumers is not outweighed by countervailing benefits to consumers or competition, as there can be no benefit to consumers when they are required to pay more for the same product.  As such, Defendants induce consumers into purchasing the Products, reasonably believing such products are dishwasher safe, when in fact, they are not. Therefore, Defendants' conduct was and continues to be "unfair."

88.     As a result of Defendants' unfair business acts and practices, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the California Subclass and California Consumer Subclass.

89.     Defendants committed "unlawful," "unfair," and/or "fraudulent" business acts or practices by, among other things, engaging in conduct Defendants knew or should have known would be likely to and did deceive reasonable consumers, including Plaintiff and the members of the California Subclass and California Consumer Subclass. By relying on Defendants' false and misleading representations indicating the Products are dishwasher safe, Plaintiff and the other members of the California Subclass and California Consumer Subclass purchased the Products. Moreover, based on the very materiality of Defendants' fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the members of the California Subclass and California Consumer Subclass.

90.     Defendants knew or should have known that its labeling and marketing of the Products would likely deceive a reasonable consumer.

91.     Plaintiff requests that this Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the California Subclass and California Consumer Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and members of the California Subclass and California Consumer Subclass, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**California Commercial Code § 2314 (2)(f)**
(*for the California Subclass and California Consumer Subclass*)

92.     Plaintiff realleges Paragraphs 1-58 above as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass and California Consumer Subclass against Defendants.

94.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

95.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

96.     Defendants are merchants with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

97.     By advertising the Products with their current packaging, Defendants made an implied promise that the Products are dishwasher safe. The Products have not "conformed to the promises…made on the container or label" because are not dishwasher safe. Plaintiff, as well as consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable.

98.     Therefore, the Products are not merchantable under California law and

Defendants have breached their implied warranty of merchantability in regard to the Products.

99.     Plaintiff realized that the Products did not conform to the promises made on the packaging in or around January 2023, and Defendants promptly received a letter of notice.

100.    If Plaintiff and members of the California Subclass and California Consumer Subclass had known that the Products were not dishwasher safe, they would not have been willing to pay the premium price associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the California Subclass and California Consumer Subclass have suffered injury and deserve to recover all damages afforded under the law.

**FIFTH CLAIM FOR RELIEF**
**Common law Fraud**
***(for the Classes)***

101.    Plaintiff realleges Paragraphs 1-58 above as if fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

103.    Defendants have willfully, falsely, or knowingly packaged and marketed the Products in a manner indicating that the Products are dishwasher safe when they are not. Therefore, Defendants have made misrepresentations as to the Products.

104.    Defendants also failed to adequately disclose that the Products are not dishwasher safe in order to induce consumers' purchases of the Products.

105.    Defendants' misrepresentations and omissions are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions) because they relate to the characteristics of the Products.

106.    Defendants knew or recklessly disregarded the fact that the Products are not dishwasher safe.

107.    Defendants intends that Plaintiff and other consumers rely on these representations and omissions, as evidenced by Defendants' intentionally using labeling that

directly states that the Products are dishwasher safe.

108. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentations and omissions when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

109. Therefore, as a direct and proximate result of Defendants' fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
**Quasi Contract/Unjust Enrichment/Restitution**
(*for the Classes*)

110. Plaintiff realleges paragraphs 1-58 above as if fully set forth herein.

111. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

112. As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Classes therefore have been induced by Defendants' misleading and false representations about the Products, and paid for them when they would and/or should not have, or paid more money to Defendants for the Products than they otherwise would and/or should have paid.

113. Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes.

114. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

115. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit,

or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

116.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### Intentional Misrepresentation
### (*for the Classes*)

117.     Plaintiff realleges paragraphs 1-58 above as if fully set forth herein.

118.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

119.     Defendants marketed the Products in a manner indicating that the Products are dishwasher safe when they are not. Therefore, Defendants have made misrepresentations as to the Products.

120.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the characteristics of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

121.     At all relevant times when such misrepresentations were made, Defendants knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

122.     Defendants intend that Plaintiff and other consumers rely on these representations, as evidenced by Defendants' intentionally using packaging that directly states that the Products are dishwasher safe.

123.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at

the prices at which they were offered.

124.    Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (*for the Classes*)

125.    Plaintiff realleges paragraphs 1-58 above as if fully set forth herein.

126.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

127.    Defendants marketed the Products in a manner indicating that the Products are dishwasher safe when they are not. Therefore, Defendants have made misrepresentations as to the Products.

128.    Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the characteristics of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

129.    At all relevant times when such misrepresentations were made, Defendants knew, or had been negligent in not knowing, that the Products were not dishwasher safe. Defendants had no reasonable grounds for believing their misrepresentations were not false and misleading.

130.    Defendants intend that Plaintiff and other consumers rely on these representations, as evidenced by Defendants intentionally using packaging that directly states that the Products are dishwasher safe.

131.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

132.    Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A.    certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.    declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Defendants have committed the violations of law alleged herein;

D.    providing for any and all injunctive relief the Court deems appropriate;

E.    awarding statutory damages in the maximum amount for which the law provides;

F.    awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.    providing for any and all equitable monetary relief the Court deems appropriate;

H.    awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.    awarding Plaintiff reasonable costs and expenses of suit, including attorneys' fees;

J.    awarding pre- and post-judgment interest to the extent the law allows; and

K.    providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: December 4, 2023                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Timothy J. Peter*
Timothy J. Peter (Bar No. 306965)
*tpeter@faruqilaw.com*
1617 JFK Boulevard, Suite 1550
Philadelphia, Pennsylvania 19103
Telephone: (267) 536-2145
Facsimile: (215) 277-5771

*Counsel for Plaintiff*
*and the Proposed Classes*