**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIDGET SIMPSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WALGREEN CO.; SUMTER EASY HOME LLC; NINGBO (USA) HOME-LINK PLASTIC PRODUCT MFG., LTD.<br><br>    Defendants. | No. 23-cv-16465<br><br>Judge Franklin U. Valderrama |

## MEMORANDUM OPINION AND ORDER

Bridget Simpson (Plaintiff) purchased plastic cutlery that was labeled "dishwasher safe" from a Walgreens store. When Plaintiff washed that cutlery in her dishwasher's lower rack, however, it melted into her dishwasher. So, Plaintiff sued, individually and on behalf of all others similarly situated, Walgreens, Co. (Walgreens), and Sumter Easy Home LLC (Sumter) and Ningbo (USA) Home-Link Plastic Product Mfg., Ltd., (Ningbo), the manufacturers and distributors of the cutlery (collectively "Defendants"), asserting a variety of consumer protection claims. R. 1, Compl.[1] Defendants move to dismiss the complaint, R. 15, Mot. Dismiss, and move to strike the class action allegations, R. 16, Mot. Strike. For the reasons stated in this opinion, the Court grants in part and denies in part the motion to dismiss and denies the motion to strike.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background[2]

Plaintiff is a citizen of California and resides in Riverside, California. Compl. ¶ 8. In May of 2022, Plaintiff purchased Complete Home Heavy Duty (Complete Home) plastic cutlery at a Walgreens store in Riverside. *Id.* The front and back of the product were labeled "DISHWASHER SAFE" and "HEAVY DUTY" in all caps. *Id.* The sides of the product were also labeled "HEAVY DUTY." *Id.* Plaintiff purchased the product in part because she believed it was dishwasher safe. *Id.* ¶ 9. To Plaintiff's understanding, "dishwasher safe" means it can be washed anywhere in the dishwasher, and means something different than "top-rack-only" dishwasher safe.

After using the plastic cutlery Plaintiff washed the cutlery in her dishwasher's cutlery basket on the lower rack, where it melted into her dishwasher. *Id.* ¶ 10. As it turns out, the bottom of the Complete Home box cautions: "DISHWASHER SAFE IF CLEANED ON THE TOP RACK." *Id.* ¶ 28.

 

*Id.* Plaintiff relied on the "dishwasher safe" label when she purchased—and later

---

[2]The Court takes the following allegations as true at this stage and makes all reasonable inferences in favor of the Plaintiff. *See* R. 1, Compl.; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

washed—the product, and that she would not have purchased it, or at least would not have paid as much, had she known it could only be washed on the top rack. *Id.* ¶ 11.

Plaintiff alleges that the labels "dishwasher safe" and "heavy duty" on Complete Home's packaging are misleading. *Id.* According to Plaintiff, it is common practice in the plastic dish industry to clearly indicate when a product can only be washed safely on the top rack. *Id.* ¶ 20–25. In fact, the commonly used "dishwasher safe" symbols are distinct from the "top rack only" symbols. *Id.* ¶ 23. The way Plaintiff sees it, the label "dishwasher safe," with no qualifiers, means that the product can be washed anywhere in the dishwasher. *Id.* ¶ 25. These labels are particularly important for cutlery, because a dishwasher's cutlery basket is ordinarily located on the bottom rack. *Id.* ¶ 26. Thus, when Complete Home's cutlery product contains prominent labels of "dishwasher safe" and "heavy duty," but only disclose that it is "top rack only" on the bottom of the box, from Plaintiff's point of view, it creates the false impression that the product is dishwasher safe. *Id.* ¶ 33.

Plaintiff, on behalf of herself and all consumers who purchased Complete Home Heavy Duty plastic cutlery at Walgreens stores sued Defendant Walgreens, and Defendants Sumter and Ningbo, the manufacturer, and distributor of the cutlery. *Id.* ¶ 14–15. Plaintiff brings claims on behalf of a California subclass, asserting violations of the California Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750, *et seq.*, the California False Advertising Act, CAL. BUS. & PROF. CODE § 17500 *et seq.*, California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*, and breach of implied warranty under CAL. COMMERCIAL CODE § 2314(2)(f). On behalf of

the entire class, Plaintiff asserts state law claims of common law fraud, unjust enrichment, intentional misrepresentation, and negligent misrepresentation. Plaintiff seeks damages and injunctive relief.

Defendants now move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Rule 12(b)(1) for lack of standing to pursue injunctive relief. *See generally* Mot. Dismiss. They also move to strike the class action allegations under Rule 23. *See generally* Mot. Strike. The fully briefed motion is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

4

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Hallinan*, 570 F.3d at 820. Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44).

## Analysis

## I. Defendants' Rule 12(b)(6) Motion

The Court begins with Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim.[3]

---

[3] Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Word Seed Church v. Vill. of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024) (citation omitted). This Court has subject matter jurisdiction under the Class Action Fairness Act (CAFA) 28 U.S.C. § 1332(d). Plaintiff alleges that she is a citizen of California, Compl. ¶ 8, and Walgreens is an Illinois corporation and headquartered in Illinois, R. 22 at 2. Thus, at least one Defendant is a citizen of a different state than at least one Plaintiff, and minimal diversity is satisfied. Further, Plaintiff alleges that the amount in controversy across the entire class is greater than $5 million. Compl. ¶ 16.

### A.     CLRA, FAL, and UCL "Reasonable Consumer" Standard

In Counts I, II, and III, Plaintiff asserts claims under the California Consumers Legal Remedies Act (CLRA), California's False Advertising Law (FAL), and California's Unfair Competition Law (UCL) respectively. Although they are different, each of these statutes bars relatively similar conduct. The CLRA "prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing CAL. CIV. CODE § 1770). The FAL similarly prohibits any "unfair, deceptive, untrue, or misleading advertising." *Id.* (citing CAL. BUS. & PROF. CODE § 17500)). Finally, the UCL "prohibits any 'unlawful, unfair or fraudulent business act or practice.'" *Id.* (citing CAL. BUS. & PROF. CODE § 17200)). All of these claims have one element in common: under California law, the plaintiff must allege that the advertisement misleads a "reasonable consumer." *Id.* ("claims under these California statutes are governed by the 'reasonable consumer' test").[4]

Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted).

This requires more than a mere possibility that [the] label "might conceivably

---

[4]"When a federal court sits in diversity, 'we look to the choice-of-law rules of the forum state to determine which state's law applies'" to the issues before it. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). "Illinois follows the Restatement (Second) of Conflicts of Laws and uses the 'most significant relationship' test to decide choice-of-law issues." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) (citing *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). In the consumer protection context, "where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies." *Id.* (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148(1) (1971)). Plaintiff both received and relied on the representation at issue in California. Thus, the Court applies California substantive law in deciding Plaintiff's state law claims.

be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 495 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

*Id.* at 965.

Defendants argue that Plaintiff fails to state a claim under these statutes because it is not plausible that a significant portion of reasonable consumers would be deceived by the Complete Home packaging. Specifically, they maintain that no reasonable consumer could be misled by the labeling because (1) it is in fact labeled as top-rack-only dishwasher safe on the bottom of the box; (2) Plaintiff does not allege that she was unaware of the top-rack-only label; and (3) there is no label stating that the product is safe for the bottom rack. Mot Dismiss at 3–6. At most, submit Defendants, the label "dishwasher safe" is ambiguous. Mot Dismiss at 4.

Defendants lean heavily on *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) for the proposition that when a label is merely ambiguous, it is not misleading, and that a reasonable consumer would check the bottom of the box for more details. Mot Dismiss at 4–6. In *McGinity,* the Ninth Circuit held that a shampoo and conditioner line named "Pantene Pro-V Nature Fusion," which featured the image of an avocado and a green leaf, did not mislead consumers into thinking the shampoo had natural products, because it did "not promise that the product is wholly natural," made no "affirmative promise about what proportion of the ingredients were natural," and instead, a reasonable consumer would understand the name "Nature Fusion" to mean any number of things. *Id.* at 1098. While the front label was not

7

misleading, it was ambiguous, but any reasonable consumer, concluded the court, would resolve that ambiguity by reference to the back label, which clarified that the smoothness of the shampoo and conditioner products were simply *inspired* by nature. *Id.* at 1099; *See also Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) (holding no reasonable consumer would expect "100% New Zealand Manuka Honey"—which was by definitively and undisputedly entirely composed of New Zealand Manuka honey—to also mean that every contributing bee only pollinated the Manuka flower).

Defendants argue that, in this case, as in *McGinity*, the packaging for the plastic cutlery clarifies any potential ambiguity with term "dishwasher safe" by adding in all caps the statement "dishwasher safe if cleaned on the top rack." Mot at 6.

Plaintiff counters, as an initial matter, that whether a representation is likely to deceive a reasonable consumer "is almost always a question of fact, not appropriate for resolution on a motion to dismiss." Resp. at 3 (citing *Williams*, 552 F.3d at 928–39). On a more substantive level, Plaintiff argues that "disclosures that are not on the consumer-facing front label do not cure misleading front-label representation because a reasonable consumer is 'not expected to look beyond misleading representations on the front of the box to discover the truth in fine print on the back label.'" *Id.* (quoting *Williams*, 552 F3d. at 939)).

In *Williams* the front label of defendant's fruit juice box contained the phrase "fruit juice snacks," pictures of fruits and the side label stated that the product was made with "real fruit juice and all other natural ingredients." *Id.* at 936. However,

8

when consumers turned the package over, they would discover that the product did not contain juice from any of the fruits pictured on the front. The Ninth Circuit held that the product could lead a reasonable consumer to falsely believe the drink contained the pictured fruits and all-natural ingredients, despite the ingredient list stating that the two most prominent ingredients were sugar and corn syrup, and the only fruit used was grape. 552 F.3d at 938–39 (reversing district court's dismissal of consumer protection claims for failure to state a claim). The Ninth Circuit rejected the idea that a consumer should be expected to check an ingredient list for misrepresentations; instead, "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id.* at 939–41. As for *McGinity*, that case, submits Plaintiff, is distinguishable because in that case it was clear that the phrase "Nature Fusion" was ambiguous. Resp. at 4. Here, according to Plaintiff, there is nothing to support the contention that the term "dishwasher safe" is ambiguous. The Court finds that Plaintiff has the better of the argument.

For starters, Plaintiff is correct that dismissal at the pleading stage is rare. *Williams*, 552 F.3d at 939. Next, while Defendants rely heavily on *McGinty* for the proposition that a front label must be unambiguously deceptive to preclude a defendant from insisting that courts look at the back label in tandem with the front label in determining whether the product is misleading, that standard has since been clarified. In *Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771 (9th Cir. 2024), the Ninth Circuit reversed the dismissal of consumer protection claims. There, the

plaintiffs claimed that they had been deceived by baby wipes that prominently displayed they were "'Plant-based," even though the back of their packaging disclaimed that they included synthetic ingredients." *Id.* at 775–76. The court held the claims plausible because a disclaimer on the back label of a package is not necessarily sufficient to dispel the deception caused by a misleading statement on the package's front. *Id.* at 778–79.

Based on the allegations in the complaint, the Court finds that Plaintiff plausibly alleges that the front label of the Complete Home plastic cutlery is unambiguously deceptive to a reasonable consumer. Plaintiff alleges that the product states that it is "dishwasher safe." Compl. ¶ 20–26, 33. Further, Plaintiff alleges that "dishwasher safe" means both to the industry and consumers that a product can be washed anywhere in the dishwasher. *Id.* Thus, a reasonable consumer would have no reason to look at that statement and seek further clarification on whether it was only safe for the top rack. In short, the Court finds that taking all inferences in favor of the Plaintiff, that a reasonable consumer would look at a box of "heavy duty" plastic cutlery labeled as "dishwasher safe" on the front and take it at its word. Whether this statement is ambiguous is an issue for another day.[5] *See Williams*, 552 F.3d at 938 ("whether a business practice is deceptive will usually be a question of fact"). In sum, the Court finds that Plaintiff has plausibly alleged that a reasonable consumer would be misled by the packaging.

---

[5] The Court declines to consider the evidence Defendants cite to in support of their argument at this stage. *See* Mot. Dismiss at 4 n.1.

### B.     CLRA Statutory Notice Requirements

Defendants separately move to dismiss Plaintiff's CLRA claim for failure to allege compliance with the statute's pre-suit notice requirement. Mot. Dismiss at 6-7.

Section 1782 of the CLRA provides that "[t]hirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall": "(1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by" the CLRA, and "(2) [d]emand that the person correct, repair, replace, or otherwise rectify the goods or services." CAL. CIV. CODE § 1782(a). Further, the statute requires that the notice be in writing, sent by certified or registered mail with a return receipt requested, "to the place where the transaction occurred or to the person's principal place of business within California." *Id.* Defendants do not dispute that Plaintiff gave some form of notice, but argue that the notice was deficient. Defendants attach Plaintiff's pre-suit demand letter to their motion to dismiss,[6] and it is only addressed to Walgreens' agent in California and their Illinois headquarters. *See generally* Ex. 1, Mot. Dismiss.

Plaintiff's notice states:

Pursuant to Cal. Civ. Code § 1782, on May 2, 2023, counsel mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant Walgreens. Defendant Walgreens received the notice and demand letter on May 3, 2023. Defendants Sumter and Ningbo's parent company confirmed receipt of the letter on June 7, 2023. The CLRA letter that provided notice of Defendants' violation of the CLRA demanded Defendant Walgreens correct,

---

[6]Plaintiff does not oppose consideration of the demand letter, and because the notice letter is referenced in the Complaint and central to the Plaintiff's CLRA claim, the Court can consider it under the incorporation-by-reference doctrine. *See In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 926 (7th Cir. 2025).

repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant Walgreens refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendants failed to comply with the letter.

Compl. ¶ 70. Defendants argue that the notice is deficient because Plaintiff did not (1) allege that she mailed Defendants Sumter or Ningbo any pre-suit notice, only that they acknowledged receipt of the letter, or (2) allege that she sent Walgreen's notice "to the place where the transaction occurred" or to Walgreen's principal place of business in California. § 1782(a). Mot. Dismiss at 7. Defendants contend that courts require "strict compliance" with the statute's notice requirements. Mot. Dismiss at 6 (citing *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021).

Plaintiff does not dispute that she did not serve notice on Defendants Ningbo or Sumter, or that she did not serve Walgreens at "the place where the transaction occurred" or at Walgreen's "principal place of business within California." Instead, she argues that courts do not demand strict compliance with the statute but instead examine whether a plaintiff's notice is in accordance with the purpose of the statute's notice requirements. Resp. at 5 (citing *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (Cal. Ct. App. 2009)). In reply, Defendants argue that even after *Morgan*, courts routinely dismiss CLRA's claims, including without leave to amend, where the plaintiff did not strictly comply with the statutory notice requirements. Reply at 4 (citing *Fish v. Aviation*, 2019 WL 690286 (N.D. Cal. Feb. 19, 2019), among others).

"The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim." *Cattie v. Wal-Mart Stores, Inc.*, 504 F.

Supp. 2d 939, 949 (S.D. Cal. 2007) (citation omitted). There is some variation as to how strictly courts enforce the notice requirement. *See Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1059 (C.D. Cal. 2020) (discussing split among courts) ("the Ninth Circuit has noted that 'there is a split in authority on whether the CLRA requires strict compliance with its notice provision' and has declined to 'weigh in on this issue'" (citing *Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 708–09 (9th Cir. 2010)).

In *Corbett*, for example, the case relied on by Defendants, the court dismissed the complaint for failure to comply with the CLRA's notice requirements because the plaintiff did not identify the specific violation and did not send notice to the defendant's principal place of business in California. *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021). *Corbett* noted the California Court of Appeals holding in *Morgan* that the notice "requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30–day period that it will correct those wrongs within a reasonable time." *Id.*; 99 Cal. Rptr. 3d 768, 789. Dismissal with prejudice, however, is not required to satisfy the purpose of the statute. *Id.* Since *Corbett* and *Morgan*, other district courts have followed suit and dismissed CLRA claims that fail to comply with the notice requirement without prejudice, "until 30 days or more after the plaintiff complies with [the CLRA's notice requirements]." *Oh v. Catalina Snacks, Inc.*, 764 F. Supp. 3d 903, 920 (C.D. Cal. 2025) (citation omitted).

While Plaintiff invites the Court to find that strict compliance is not required,

the Court declines to do so here. Plaintiff has not cited any case that excuses the notice requirements under these circumstances. Plaintiff did not serve notice on Ningbo or Sumter at all. And Plaintiff's argument that she served notice on Walmart fares no better, because Plaintiff does not dispute that she did not serve Walgreens at the place where the transaction occurred, or at Walgreen's principal place of business in California. Resp. at 5–6.

Accordingly, the Court finds that Plaintiff has failed to serve proper pre-suit notice under the CLRA. Plaintiff's CLRA claims are dismissed without prejudice until 30 days after proper notice is served.

### C.    Breach of Implied Warranty

In Count IV, Plaintiff asserts a claim for breach of warranty of merchantability under California Commercial Code § 2314.

Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale." *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022) (citing CAL. COM. CODE § 2314(1)). The term "merchantable" requires that a product "conform to the promises or affirmations of fact made on the container or label if any." *Id.* (citing § 2314(2)(f)). To state a claim, a plaintiff must allege that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Scott v. Saraya USA, Inc.*, 675 F.

14

Supp. 3d 1040, 1049 (N.D. Cal. 2023).[7] "To constitute a warranty and be actionable, the statement must be specific and unequivocal." *Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 807 (C.D. Cal. 2024).

Defendants move to dismiss this claim on the basis that Plaintiff has not identified any "promise or affirmation of fact to which the product did not conform." Mot. Dismiss at 8. Defendants point to *Martinez v. Mead Johnson & Co., LLC*, 2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) in support of their position. In *Martinez* the court granted a motion to dismiss, finding that the representation that an infant formula was "milk-based" was not a specific and unequivocal statement promising that the formula was predominantly milk." *Id.* at *5. The court, however, acknowledged that "contexts do vary, and they do matter." *Id.* General statements that a product is "based" on something may be reasonably interpreted as being "predominantly" made of that thing in certain contexts, but in the infant formula context, a consumer could easily turn the product around and see that milk is an ingredient, just not the main one. *Id.* at *5–6. A consumer may be misled, but misunderstandings are insufficient to state a breach of warranty claim. *Id.* at *6. Defendants argue that this case is similar to *Martinez* because "the package's statement that the plastic cutlery was 'dishwasher safe' is not even alleged to be false." Mot. Dismiss at 8.

Plaintiff responds that the statement "dishwasher safe" is more than

---

[7]This Court also turns to cases examining breach of express warranty for guidance, because where claims for breach of express warranty and implied warranty are based on the same language, they rise and fall together. *Tarvin*, 756 F. Supp. 3d at 807.

misleading, it is false, and therefore a promise to which the product did not conform. Resp. at 6. Under the statute, this is sufficient. *Id.* (citing CAL. COM. CODE § 2314(2)(f)).

Here, taking the allegations in the Complaint as true, the Court finds that Plaintiff has plausibly alleged a specific and unequivocal statement: that the product is dishwasher safe. As explained above, Plaintiff alleges that the industry treats each of these terms differently. Plaintiff alleges that the product did not conform to the promise that the goods were "dishwasher safe," and that she would not have been willing to buy them at that price, or at all, had she known they were not dishwasher safe. Compl. ¶¶ 92–100. In short, "dishwasher safe" is more than misleading; it directly contradicts "top-rack-only."

Defendants also argue in a footnote[8] that vertical privity cannot exist in a breach of warranty claim, so Defendants Ningbo and Sumter are improper Defendants. Under California Commercial Code section 2314, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Ordinarily, a buyer and seller stand in privity, and "an end consumer such as [Plaintiff] who buys from a retailer is not in privity with a manufacturer." *Id.* Plaintiff counters that she falls under an exception to this rule, that is, she relied on written

---

[8]"A party may waive an argument by presenting it only in an undeveloped footnote." *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) (citing *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015); J. Valderrama Standing Order, Memorandum of Law Requirements ("Generally, the Court will not consider substantive arguments contained in footnotes.").

labels or advertisements of a manufacturer. Resp. at 6 n.1. Further, Plaintiff claims that "[a]n exception to the privity requirement also exists where a plaintiff is an intended third-party recipient of the product." *Id.* In other words, Plaintiff argues that she is an intended third-party beneficiary of the implied warranties between Walgreens and Ningbo and Sumter. Defendants' reply fails to address this argument and Defendants therefore waive any response. *See generally* R. 30, Reply Mot. Dismiss; *In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived.").

An exception to the privity rule for express warranty claims arises "when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens*, 534 F.3d at 1023. Plaintiff has alleged that she relied on advertisements and labels made by Ningbo and Sumter. However, the exceptions listed in *Clemens* are dicta, as the plaintiff in that case did not make the argument that the exception based on the statement of a manufacturer applied. Further, California district courts have more recently confirmed that the "exception to the privity requirement [of the labels of the manufacturer] exists but only as to breach of express warranty, and not breach of implied warranty." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *11 (S.D. Cal. Nov. 29, 2018) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)); *see also Ostenfeld v. Laundress, LLC*, 2024 WL 967124, at *8 (S.D.N.Y. Mar. 5, 2024) ("There is 'some ambiguity in the case law'—apparently stemming from dicta in *Clemens* itself—as to" the vertical privity exceptions in implied warranty claims. "In the years since, however, California courts appear to have course-

17

corrected and reaffirmed the California Supreme Court's holding in *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954)").

Plaintiff only brings a claim for breach of implied warranty, and *Burr* is clear that the exception Plaintiff invokes is only applicable to claims for breach of express warranty. *Burr*, 42 Cal. 2d at 696 ("[T]he ... exception, where representations are made by means of labels or advertisements, i[s] applicable only to express warranties."); *see Quinn v. Proctor & Gamble Co.*, 2026 WL 26081, at *8 (S.D. Cal. Jan. 5, 2026) ("regarding the advertising exception, [p]laintiff brings an implied warranty claim, so [p]laintiff cannot use this exception as it only applies in express warranty claims"). Consequently, the Court finds that the exception does not apply.

As for Plaintiff's argument that she is an intended third-party recipient of implied warranties between Walgreens and Ningbo and Sumter, "[t]he Ninth Circuit has not explicitly recognized the existence of an exception to the privity requirement for third-party beneficiaries," and *Clemens* did not discuss any such exception. *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1213–14 (N.D. Cal. 2025) (declining to apply third-party beneficiary exception). Those cases that have found the exception to apply have been based on the California Supreme Court's decision in *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978), which involved the "very specific factual scenario involving a construction contract between a contractor and a sub-contractor." *Quinn*, 2026 WL 26081, at *10 (collecting cases). While there is a split on this issue, recent courts have declined to apply the exception to consumers purchasing goods from retail stores. *See id.*; *Valentine*, 783 F. Supp. 3d

18

1204. Finally, as *Clemens* recognized, "California courts have painstakingly established the scope of the privity requirement . . . , and a federal court sitting in diversity is not free to create new exceptions to it." *Clemens*, 534 F.3d at 1024. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's breach of implied warranty claim.

### D.    Common Law Claims

Defendants move to dismiss Plaintiff's common law claims (Count V–VIII) for common law fraud, unjust enrichment, intentional representation, and negligent misrepresentation.

#### 1.    *Common Law Fraud (Count V); Intentional Misrepresentation (Count VII) and Negligent Misrepresentation (Count VIII).*

California law treats the torts of intentional misrepresentation and negligent misrepresentation as forms of common law fraud, so the Court evaluates these claims together. *Tarvin*, 756 F. Supp. 3d at 808 (collecting cases equating common law fraud with intentional misrepresentation and negligent misrepresentation).

Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (2004).

Because the "common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the [Complaint] must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). To satisfy

Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.* (citation omitted).

> For claims based on deceptive product packaging or labeling, many courts in California have applied a relatively straightforward test for the application of Rule 9(b): The 'who' is the defendant; the 'what' is the allegedly misleading packaging; the 'when' is the proposed class period during which time the packaging was deceptive; the 'where' is the packaging containing the allegedly misleading statement—or in the case of deceptive packaging, the packaging itself—and the 'how' is the plaintiff's explanation for why the packaging is misleading.

*Oh*, 764 F. Supp. 3d at 913 (citation omitted).

It is true that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (alteration in original) (affirming finding that plaintiff did not properly differentiate among defendants in civil RICO case); *see also Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("this court has previously 'rejected complaints that have "lumped together" multiple defendants"). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764–65 (alterations in original) (citation omitted).

The tort of negligent misrepresentation does not require scienter or intent to defraud, but rather "encompasses the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," and "the positive

assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1258 (2003) (cleaned up) (citing CAL. CIV. CODE, § 1572, subd. 2).

As an initial matter, Defendants argue that Plaintiff fails to plead her fraud claim with particularity because she did not allege which Defendant made the misrepresentation. Mot. Dismiss at 10. On a more substantive basis, Defendants contend that Plaintiff fails to even allege the existence of a false statement or material omission. *Id*. The way Defendants see it, there are no allegations that the product is not "dishwasher" safe. *Id*.

Plaintiff counters that she has pled the "who, what, when, where, and how" required by Rule 9(b), and that she has properly alleged that all Defendants were responsible for the statement. Resp. at 7–8. Further, she argues that the front-label statement that the product was dishwasher safe was false, because a product that can only be washed on the top rack is not actually dishwasher safe. Resp. at 8.

The Court begins with Defendants' arguments that the statement "dishwasher safe" is not fraudulent. California's statutory claims for misleading advertising are distinct from common law fraud, because while the statutes only require that a reasonable consumer is likely to be deceived, a common law fraudulent statement "must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages." *In re Tobacco II Cases*, 207 P.3d 20, 29 (2009). "Thus, a 'perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information'

21

may be actionable under consumer protection statutes but not common law fraud." *Tarvin*, 756 F. Supp. 3d at 808.

Defendants maintain that the statement that the plastic cutlery was "dishwasher safe," even if misleading, was also perfectly true. It could in fact be washed safely in the dishwasher, but only on the top rack. As explained before, however, Plaintiff alleges that "dishwasher safe" has a different meaning than top-rack-only—to consumers and the industry, it means it can be washed anywhere in the dishwasher. Taking all inferences in favor of the Plaintiff, the term "dishwasher safe" was not just misleading, but false. *Scott*, 675 F. Supp. 3d at 1044 (denying motion to dismiss consumer protection and fraud claims). Accordingly, the Court finds that Plaintiff has properly alleged a false statement. *See also Davidson*, 889 F.3d at 964–65 (affirming denial of motion to dismiss fraud claims where plaintiff alleged "flushable" label was false, because although the wipes can pass through home pipes, truly "flushable" wipes must disperse quickly enough to not damage sewers and septic systems). Plaintiff also alleges that she relied on this statement in purchasing the product. The Court turns to the Defendants' argument that Plaintiff failed to specify each Defendants' role.

Here, Plaintiff alleges that all Defendants are responsible for the statement but differentiates between their roles. Specifically, Walgreens sells and markets the product in its retail stores, and Ningbo and Sumter manufacture the product and packaging, then market, sell, and distribute the product to stores like Walgreens. *See Dubrosky v. Am. Honda Motor Co.*, 2025 WL 2451031, at *4 (C.D. Cal. Aug. 13, 2025)

22

(denying motion to dismiss where plaintiff alleged defendants largely committed the same acts, "there was no reason (and no way) for [plaintiffs] to differentiate among those allegations that are common to [both defendants]."). Accordingly, the Court finds that Plaintiff has satisfied the requirements of Rule 9(b).

Defendants separately move to dismiss the Plaintiff's negligent misrepresentation claim under the economic loss rule. This doctrine "prevents a party to a contract from recovering economic damages resulting from breach of contract under tort theories of liability." *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1190 (9th Cir. 2021), *certified question answered*, 553 P.3d 1213 (2024). In other words, if the "breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement," the tort claim is barred. *PMM Holdings, LLC v. Meyer*, 2025 WL 3764051, at *17 (E.D. Cal. Dec. 30, 2025) (citation omitted). "The rule prevents the law of contract and the law of torts from dissolving one into the other." *Rattagan*, 19 F.4th at 1191 (cleaned up). Defendants argue that Plaintiff has only alleged "disappointed expectations" at Defendants' alleged failure to meet their contractual promise that the cutlery was dishwasher safe. Mot. Dismiss at 13. Not so counters Plaintiff, as California law does not apply the economic loss doctrine to fraud and misrepresentation claims. Resp. at 10–11. The Court agrees with Plaintiff.

California law is clear that "the economic loss rule does not bar fraud claims premised on affirmative misrepresentations" because they are independent from the breach of contract. *Rattagan*, 19 F.4th at 1191 (citing *Robinson*, 102 P.3d 268, 274

(defendant's tortious conduct was separate from the breach of contract)). Here, Plaintiff alleges that Defendants made an affirmative misrepresentation that the product was dishwasher safe in order to sell its product. Therefore, her fraud claim is not barred by the economic loss rule.

Courts in the Ninth Circuit, however, are split over whether the economic loss rule applies to negligent misrepresentation claims. *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) (per curiam); *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016) (collecting cases) (citing *Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (per curiam) (affirming jury verdict because plaintiff "not precluded [by economic loss rule] from suing the defendants for fraud and negligent misrepresentation in addition to breach of contract" where "one party has lied to the other"); *DiGiacanto v. RB Health US*, 668 F. Supp. 3d 950 (N.D. Cal. 2023); *cf Goodwin v. Walgreens, Co.*, 20213 WL 4037175 (C.D. Cal. June 14, 2023). The Court finds the reasoning in *Kalitta* and *FieldTurf* persuasive.

In *Kalitta*, the plaintiff air freight-carrier brought a claim for negligent misrepresentation against the manufacturer that was responsible for modifications to the aircraft. *Id.* at 603. After a mistrial, the defendant moved for judgment as a matter of law, arguing that a plaintiff who is not in privity with the defendant may not recover purely economic loss in actions for negligence and negligent misrepresentation. *Id.* at 603–604. The district court denied the defendant's motion for judgment as a matter of law with respect to the negligent misrepresentation claim.

*Id.* The Ninth Circuit affirmed the district court's order, and while it did not address the economic loss rule directly, it held "that California law classifies negligent misrepresentation as a species of fraud, for which economic loss is recoverable." *Kalitta*, 315 F. App'x at 607.

In *FieldTurf, USA, Inc.*, the plaintiff purchased a synthetic athletic field from the defendant based on representations made in the defendants' marketing materials. 2016 WL 3519294, at *2. The parties subsequently entered into a contract in which the defendants represented that the field was free from defects. *Id.* The plaintiff sued for breach of contract alleging that the "defendants failed to make good on their warranty when they failed to replace the field," and a negligent misrepresentation claim alleging that "plaintiff would not have entered into this contract absent alleged defendants' misrepresentations." *Id.* at *5. The court rejected the argument that the economic loss rule barred the two claims because the negligent misrepresentation claim alleged that "plaintiff would not have entered into this contract absent alleged defendants' misrepresentations," whereas the breach of contract claim focused on the breach of warranties within the contract. *Id.* In short, the court found that the negligent misrepresentation claim "sound[ed] more in deceit/fraud that it [did] in negligence." *Id.*

Here, as in *FieldTurf,* the plaintiff alleges that the label "dishwasher safe" was false, and that she relied on this false representation in purchasing the product. Compl. ¶¶ 11, 33. She would not have purchased the product, or would not have paid as much as she did, had she known that the representation was false. *Id.*

25

Consequently, this claim sounds more in fraud than it does in contract law.

It is certainly possible that Plaintiff's claims of common law fraud, intentional misrepresentation, and negligent misrepresentation may be, in essence, the same claim, and Plaintiff is not permitted double recovery. But Plaintiff can still bring claims in the alternative, and based on the allegations and weight of authority, the Court will not dismiss her claim for negligent misrepresentation based on the economic loss doctrine.

Defendants' cited cases, *Schippell v. Johnson & Johnson Consumer Inc.*, 2023 WL 6178485 (C.D. Cal. Aug. 7, 2023) and *Costa v. Reliance Vitamin Co.*, 2023 WL 2989039 (N.D. Cal. Apr. 18, 2023) do not change this conclusion, which all rely on *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625 (2022).

In *Sheen*, the California Supreme Court held that the plaintiff's negligence claim was barred by the economic loss doctrine. *Sheen*, 505 P.3d 625. The plaintiff was delinquent on his loans and sent multiple letters to the defendant requesting modification. Plaintiff alleged that the bank's failure to respond to his requests constituted negligence, ultimately leading to his home's foreclosure. The court found that the economic loss rule barred his claim. The court noted that plaintiff's claim was not independent of the original mortgage contract. *Id.* at 627–28. Consequently, the mortgage contract governed their relationship, and there was no independent duty to "review" requests for modification such that this could become an independent negligence claim. *Id.* The court then stated: "because plaintiff does not assert an action for negligent misrepresentation . . . we have no reason to consider whether [it]

26

might be viable given the facts he alleges." *Id.* at 28.

The Court finds that *Sheen* has not altered the fact that "Courts frequently decline to apply the economic loss rule in materially similar consumer advertising contexts where the alleged deceit induced the transaction itself," and that the Ninth Circuit has allowed these claims to go forward. *Marks v. United Parks & Resorts, Inc.*, 2025 WL 2767941, at *14 (S.D. Cal. Sept. 26, 2025).

### 2. *Unjust Enrichment*

Defendants also move to dismiss Plaintiff's claim for unjust enrichment. Under California law, "there is not a standalone cause of action for 'unjust enrichment,'" but "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (2014)). Defendants maintain that Plaintiff fails to allege any unjust benefit conferred upon any defendant. Mot. Dismiss at 11. Plaintiff responds that when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution, as she seeks here. Resp. at 9. The Court agrees with Plaintiff.

Plaintiff alleges that Defendants' "misleading representations to Plaintiff and members of the Classes []induce[d] them to purchase the Products," but they "have not received all of the benefits promised by Defendants," and thus have "paid for [the product] when they would and/or should not have, or paid more money to Defendants for the Products than they otherwise would and/or should have paid." Compl. ¶ 112.

27

Consequently, "Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes." *Id.* ¶ 113. Courts have held that "[t]his straightforward statement is sufficient to state a quasi-contract cause of action." *Astiana*, 783 F.3d at 762; *see also Tarvin*, 756 F. Supp. 3d at 809 (denying motion to dismiss unjust enrichment claim where plaintiff alleged "false and misleading labelling caused [p]laintiff and the [c]lass to purchase the [products] at a premium" and "[d]efendant received a direct and unjust benefit, at [p]laintiff and the [c]lass's expense."). Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim for unjust enrichment.

## II.     Rule 12(b)(1) Motion

Last, Defendants argue that Plaintiff lacks Article III standing to seek injunctive relief, as she does not allege that she faces a real and immediate threat of future harm from Defendants' alleged wrongful conduct. Mot. Dismiss at 14. More specifically, Plaintiff, according to Defendants, knows about the allegedly false claim and cannot plead that she could be fooled in the future. Mot. Dismiss at 15 (citing *Daly v. FitLife Brands, Inc.*, 2023 WL 6388112 (N.D. Ill. Sept. 29, 2023)). Plaintiff counters that Defendants' argument is contrary to the weight of authority in the Seventh Circuit. Resp. at 12. Plaintiff contends that she is suffering an "ongoing injury" that "can only be remedied by an injunction," because "she would likely purchase the Products in the future if she could be assured that the Products were in fact dishwasher safe," and she "regularly visits Walgreens stores which sell the

28

products." *Id*; Compl. ¶ 12.[9]

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing for injunctive relief, Plaintiff must allege a "real and immediate" threat of future injury from Defendants' misleading labels. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). The equitable remedy of injunctive relief is unavailable absent a showing of irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

"When considering this requirement in the context of consumer fraud claims, the majority of courts in this district concluded that a plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursing injunctive relief." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Litig.*, 2024 WL 726838, at *4 (N.D. Ill. Feb. 21, 2024) (collecting cases). The Seventh Circuit also addressed a plaintiff's standing to pursue injunctive relief in the context of a consumer fraud case in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). In *Camasta*, the Seventh Circuit noted that a plaintiff who is aware of a defendant's deceptive practice is not likely to be

---

[9]Plaintiff also requests that the Court strike this portion of Defendants' motion to dismiss as it is beyond the Court's 15-page limit and does not include a table of cases. Resp. at 11 n.2. Defendants' motion is 16 pages, 1 page beyond the limit, and does not include a table of cases. However, Defendants first raise this argument on page 14 of their brief. Given the minor breach of the page limit, and the fact that Defendants raised this argument within the page limits, the Court considers it. The Court, however, directs Defendants to comply with the Court's page limits in the future, or risk having portions of their brief struck.

harmed by those practices in the future and thus lacks standing for injunctive relief. *Id.* at 741.[10] Defendants' cited cases are also consistent with this approach. *See Daly v. FitLife Brands, Inc.*, 2023 WL 6388112 *4 (N.D. Ill. Sept. 29, 2023) ("when a consumer knows about the allegedly false advertising, then that particular consumer is no longer at risk of future harm"); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021) (finding allegations insufficient to support standing where plaintiff knew of deception, and only fellow class members were unknowing); *Palmer v. Procter & Gamble Co.*, 2023 WL 5852252 *3 (N.D. Ill. Sept. 11, 2023) ("a plaintiff who alleges only a past harm caused by a deceptive sales practice faces no 'real and immediate threat' such that she will be deceived by the same practice after the deception is revealed").

The Court agrees that Plaintiff has not plausibly alleged a real and immediate threat of suffering future harm from Defendants. As Defendants point out, Plaintiff has not alleged that she in fact continues to buy this product, or that she is forced to, only that she would likely do so should she receive assurances that it is dishwasher safe. *See Palmer v. Procter & Gamble Co.*, 2023 WL 5852252, at *3 (N.D. Ill. Sept. 11, 2023) ("Palmer does not allege that she continues to purchase Defendant's product. To the contrary, she confirms that she does not purchase these products anymore."); *Daly v. Glanbia Performance Nutrition*, 2023 WL 5647232 *5 (N.D. Ill. Aug. 31, 2023) ("Since [defendant] allegedly deceived [plaintiff] only once, there is no reason to infer

---

[10]To the extent one considers this statement dicta, it is nevertheless telling. *See In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (noting that even if treated as dicta, *Camasta's* reasoning regarding Article III standing is persuasive.).

that he faces a 'real and immediate threat' of being deceived again as required for federal standing."); *Agee v. Kroger Co.*, 2023 WL 3004628, at *8 (N.D. Ill. Apr. 19, 2023) (finding plaintiff failed to allege standing, where plaintiff did not allege he "has no choice but to purchase this product"); *see In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (finding allegations insufficient to allege standing where "Plaintiffs make clear in their complaint that they would not have purchased the Affected Products had they known the truth about them.").

That Plaintiff alleges the injury is "ongoing" because Defendants still have not clarified if the products are dishwasher safe is insufficient. "[W]hether a defendant continues its allegedly deceptive trade practices is irrelevant: What matters is whether a plaintiff is likely to be harmed by them again." *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *7 (C.D. Ill. Sept. 21, 2021). True, some courts have found differently based on similar facts. *See Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016); *Muir v. NBTY, Inc.*, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016); *Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907, 915 (N.D. Ill. 2022). But the Court follows what appears to be the majority approach. Indeed, some of Plaintiff's own cited cases acknowledge there is a split but still find that a plaintiff who knows of the deception cannot show, without more, that there is a concrete risk they will be harmed by the deception in the future. *See In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *7; *Thomas, et. al, v. Walmart Inc.*, 2024 WL 1050179, at *5 (N.D. Ill. Mar. 11, 2024) (finding that plaintiffs who were aware of fraudulent claim had no concrete basis to assert they would

purchase the product at issue in the future).

In short, Plaintiff's allegations do not indicate that she is at imminent risk of purchasing Defendants' product and being deceived once more. Rather, Plaintiff's allegations amount to an admission that, based on her knowledge of Defendants' alleged deception, she will avoid this deception by not purchasing the product. The weight of authority in the Seventh Circuit indicates that such an allegation precludes Plaintiff from injunctive relief.

Accordingly, Plaintiff's claims are dismissed for lack of standing to the extent that they seek injunctive relief.

### III.    Rule 23 Motion to Strike

Recall, that in Counts V through VIII, Plaintiff asserts nationwide class action claims for common law fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment under the laws of all states where customers have purchased Complete Home Heavy Duty plastic cutlery. Compl. ¶¶ 101–132.

Defendants move to strike the nationwide class action allegations on the grounds that the class cannot meet the requirements of Rule 23.[11] *See generally* Mot. Strike. Specifically, Defendants argue that because the claims are based on varying state laws, the class cannot satisfy the commonality and superiority requirements of FED. R. CIV. P. 23. *Id*. In response, Plaintiff posits that striking the class allegations is premature at this stage, but even if the Court were to consider the motion now,

---

[11]Defendants do not move to strike Plaintiff's California class allegations.

that Defendants fail to point to an applicable conflict of law. *See generally* Resp. Mot. Strike. For the reasons stated below, the Court agrees with the Plaintiff.

The Court has discretion to consider whether a class can be properly certified under Rule 23 "[a]t an early practicable time after a person sues," and "may deny class certification even before the plaintiff files a motion requesting certification." FED. R. CIV. P. 23(c)(1)(A); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (the court has "an independent obligation to decide whether an action brought on a class basis is to be so maintained"). "It need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo*, 656 F.3d at 563. However, "[i]f the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature," and "[g]enerally, courts deny motions to strike class allegations before certification briefing." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333709, at *1 (N.D. Ill. Sept. 27, 2024) (collecting cases).

"Courts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable." *Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021) (collecting cases) ("It may be that a nationwide class is impracticable here; however, the prudent approach is to wait for a more fully developed record before deciding that issue."). As Plaintiff points out, it is unclear at this stage which state laws will apply to this case. True, the Court will eventually

33

have to undertake a choice of law analysis, but that will depend on the facts revealed in discovery. Discovery may reveal that individuals in only certain states purchased Complete Home Heavy Duty plastic cutlery in Walmart, that the states at issue have no material conflicts of law, or that state-specific subclasses are manageable even if a nationwide class is not. *See id.*; *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 396 (7th Cir. 2010) (affirming district court's "certification of the six state subclasses" on consumer fraud and breach of warranty claims, where district court made the explicit "finding that the consumer protection acts of these six states have nearly identical elements," and declined "to certify a seventh state subclass that would have required a [different] analysis").

It is true that the Seventh Circuit has held that a nationwide class for fraud and negligent misrepresentation claims "poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (vacating nationwide class certification on breach of warranty and fraud claims); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (reversing certification of nationwide product warranty classes because "a single nationwide class is not manageable"). Further, "courts commonly refuse to certify nationwide classes based on warranty, fraud, and products-liability suits based on questions of commonality, predominance and superiority." *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (declining to certify unjust enrichment subclasses because they "pose

34

insurmountable choice-of-law problems").

However, although the Seventh Circuit "strongly caution[s] against certifying multistate consumer protection or warranty claims, Seventh Circuit precedent teaches that such certifications are not categorically prohibited." *Alea v. Wilson Sporting Goods Co.*, 2017 WL 5152344, at *7 (N.D. Ill. Nov. 7, 2017) (denying motion to strike multi-state class action claims without prejudice); *see Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (reversing denial of certification of multi-state consumer protection and unjust enrichment class in part because "the court failed to recognize the question common to the claims of all putative class members: whether the []packaging was likely to mislead a reasonable consumer"). At this stage in the litigation, prior to discovery, the parties are not sure what state laws will even apply to the class. Accordingly, the Court finds that the motion to strike based on varying state laws is premature.

Defendants cited cases do not compel a different conclusion. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) (affirming striking of multi-state class action claims in part because multiple state laws applied, but declining to consider if under different circumstances, common issues of fact could overcome state law differences); *Elson v. Black*, 56 F.4th 1002, 1006–1007 (5th Cir. 2023) (affirming district court's striking of multi-state class action claims where plaintiff failed to brief differences in laws, but regardless, differences in laws "swamp[ed] any common issues and "defeat[ed] predominance"); *Jones v. BRG Sports, Inc.*, 2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) (granting motion to strike where complaint, on its face, showed

a class action was untenable in part because class applied product liability law of 18 different states). Apart from the potential for varying state laws, Defendants do not argue that Plaintiff's class action claims otherwise fail to satisfy Rule 23's requirements of commonality, typicality, and predominance. Instead, they reserve these arguments for the class certification stage. Mot. Strike at 2 n.1. Accordingly, the Court denies the motion to strike without prejudice.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss, R. 15, and denies Defendants' Motion to Strike, R. 16, without prejudice. The Court's dismissal of Plaintiff's CLRA claim, breach of implied warranty claim, and claim for injunctive relief are without prejudice.

Dated: February 13, 2026

_____
United States District Judge
Franklin U. Valderrama